IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WAYNE BURTON,                §
                                         §
            Petitioner,       §
                                          §
v.                                       §           CIVIL ACTION NO. H-06-2241
                                          §
KEITH BARRETT, Director,       §
San Jacinto County Community    §
Supervision Department,          §
                                          §
           Respondent.      §

## MEMORANDUM AND ORDER

Wayne Burton has filed a petition for a federal writ of habeas corpus under 28 U.S.C.

§ 2254, to challenge a felony conviction entered against him in San Jacinto County, Texas,

which resulted in a sentence of community supervision (*i.e.,* probation).  Burton has filed a

motion requesting a judgment in his favor.  (Doc.# 37).  The respondent has filed an answer,

arguing that Burton is not entitled to relief.  (Doc. # 38).  Burton has filed a reply.  (Doc.

# 39).  After considering all of the pleadings, the state court records, and the applicable law,

the Court denies the petition and dismisses this case for reasons that follow.

## I.   BACKGROUND AND PROCEDURAL HISTORY

A state grand jury returned a two-count indictment against Burton in San Jacinto

County cause number 8638.  Count one of the indictment alleged that Burton committed

aggravated assault by "intentionally, knowingly, or recklessly caus[ing] bodily injury to" his

estranged wife, Reyna Burton, "by striking her in the face and head with his hand, and [by]

then and there us[ing] or exhibit[ing] a deadly weapon, to-wit: a machete, during the

commission of said assault." Count two of the indictment accused Burton of committing aggravated sexual assault against Reyna Burton during the course of the same criminal episode.

On June 8, 2004, a jury in the 411th District Court of San Jacinto County, Texas, found Burton guilty as charged of aggravated assault in count one, but acquitted him of the aggravated sexual assault charges lodged against him in count two. At the conclusion of the punishment phase of the trial on June 9, 2004, the same jury found that a ten-year sentence was appropriate, but recommended suspending any term of imprisonment in favor of community supervision or probation. Consistent with the jury's recommendation, the trial court imposed a ten-year suspended sentence and placed Burton on community supervision, where he remains constrained by the conditions of his release.

On direct appeal, Burton argued that the evidence was legally and factually insufficient to prove that his wife suffered bodily injury or that he exhibited a machete during the course of the offense. An intermediate state court of appeals rejected both claims. *See Burton v. State*, No. 10-04-00235-CR, 2005 WL 2234002 (Tex. App.— Waco Sept. 14, 2005) (unpublished). Burton did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals.

On February 21, 2006, Burton filed a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. Burton argued that he was entitled to relief from his conviction and sentence because the State somehow "coerced" the jury's verdict. Burton also lodged numerous incoherent claims for ineffective assistance of counsel. Burton

2

filed another supplemental application on March 8, 2006, in which he attempted to add multiple challenges to the sufficiency of the evidence, allegations of jury tampering, and prosecutorial misconduct.  The trial court, which also presided over Burton's trial, reviewed the applications and recommended denying relief, making a limited finding that Burton's trial counsel "was not ineffective."  *Ex parte Burton*, No. 8638-A (411th Dist. Ct., March 24, 2006).  The trial court did not expressly address Burton's other claims.  On April 26, 2006, the Texas Court of Criminal Appeals dismissed the applications filed by Burton without a written order after finding that neither one complied with Rule 73.1 of the Texas Rules of Appellate Procedure.[1]  *See Ex parte Burton*, No. 64,575-01 (Tex. Crim. App.).

On May 8, 2006, Burton initiated a second state habeas corpus proceeding.  In this application, Burton stated that he was entitled to relief under Article 11.07 of the Texas Code of Criminal Procedure because the trial judge engaged in misconduct by "yelling and shouting" at the jury and because his defense counsel was ineffective for a variety of reasons.  Burton also attempted to allege, among other things, that there was no evidence or insufficient evidence to support the conviction because of "discrepancies" in the testimony about whether Reyna Burton suffered any injury.  In an attachment to the application, Burton included a litany of other rambling allegations regarding his counsel, defects in the indictment, and evidentiary shortcomings.  The trial court recommended denying relief without reaching the merits after finding that the application was an abuse of the writ in

---

[1]     Rule 73.1 requires an applicant for post-conviction habeas corpus relief to follow a particular form and to specify all grounds for relief by setting forth in summary fashion the facts supporting each ground.  *See* TEX. R. APP. P. 73.1(c).

violation of Article 11.07, § 4(c) of the Texas Code of Criminal Procedure.[2]  *See Ex parte*

*Burton*, No. 8638-B (411th Dist. Ct., May 10, 2006).  On June 14, 2006, the Texas Court of

Criminal Appeals agreed and denied relief without a written order.  *See Ex parte Burton*, No.

64,575-02 (Tex. Crim. App.).

In his pending federal petition, which is dated July 5, 2006, Burton seeks a writ of

habeas corpus to challenge his conviction under 28 U.S.C. § 2254.  (Doc. # 1).  Burton

contends that he is entitled to relief for the following reasons: (1) his conviction was

"coerced" by misconduct on the trial court's part; (2) he was denied effective assistance of

counsel because his attorney failed to call a "critical witness" or to investigate by reviewing

the District Attorney's file; (3) the evidence was insufficient to support his conviction; and

(4) the prosecution engaged in misconduct by presenting untruthful testimony from the

victim.

Initially, this Court granted the respondent's motion to dismiss Burton's petition for

failure to exhaust state court remedies by properly presenting his claims for consideration in

state court.  (Doc. # 23).  Thereafter, Burton filed another application for a writ of habeas

corpus in state court under Article 11.072 of the Texas Code of Criminal Procedure.[3]  On

---

[2]  According to the Texas abuse-of-the-writ statute, after a "final disposition of an initial application challenging the same application," a Texas court may decline to consider the merits of a successive habeas corpus application, unless the applicant shows that a factual basis for the asserted claims was unavailable on or before the date of the initial application or through the exercise of reasonable diligence on or before that date.  TEX. CODE CRIM. PROC. art. 11.07, § 4(c).

[3]  Enacted in 2003, Article 11.072 "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an

(continued...)

July 16, 2007, the state habeas corpus court, which also presided over Burton's trial, entered written findings of fact and concluded that Burton was not entitled to relief as a matter of law. *See Clerk's Record* dated July 26, 2007, at 76-78. In an unpublished decision issued on October 10, 2007, an intermediate appellate court affirmed the trial court's order denying the application for a writ of habeas corpus. *See Ex parte Burton*, No. 09-07-0324-CR (Tex. App. — Beaumont, Oct. 10, 2007). In that decision, the appellate court rejected Burton's contention that the evidence was legally and factually insufficient to prove his guilt, but did not address any of Burton's other claims. *See id.* The Texas Court of Criminal Appeals refused Burton's petition for discretionary review on November 21, 2007 (PD 1559-07).

After the Texas Court of Criminal Appeals declined to review his appeal, Burton promptly filed a motion to reinstate his federal petition. (Doc. # 31). On December 11, 2007, the Court reinstated the case after finding that Burton had exhausted his state court remedies with respect to his claim that the evidence was legally and factually insufficient to support his conviction for aggravated assault. (Doc. # 33). In addition to his challenge to the sufficiency of the evidence, the Court notes that Burton argues that he is also entitled to relief for the following reasons: (1) the trial court engaged in misconduct; (2) the prosecutor engaged in misconduct; (3) he was denied effective assistance of counsel; and (4) the respondent and the state courts erred by refusing to address his claims on state collateral

---

[3](...continued)
       order or a judgment of conviction ordering community supervision." TEX. CODE CRIM. PROC. Ann. art. 11.072, § 1; *see also* GEORGE E. DIX & ROBERT O. DAWSON , 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE §§ 45.47 – 45.49 (Supp. 2006) (discussing the new statutory procedure for seeking state habeas corpus relief from a Texas conviction and sentence of community supervision).

review.  (Doc. # 31).  Burton insists that he is entitled to relief and he requests a judgment in his favor.  (Doc. # 37).  The respondent has filed an answer, arguing that Burton's claims are without merit.[4]  (Doc. # 38).  The respondent has also provided copies of Burton's state court records.  (Docs. # 18, # 41).  The parties' contentions are discussed below under the governing federal habeas corpus standard of review.

## II.   STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

---

[4]      The answer filed by the respondent argues that Burton's petition fails on the merits and does not assert any procedural impediment to the review of his claims.  (Doc. # 38).  Therefore, the Court assumes that Burton has exhausted his state court remedies with respect to all of his allegations and that none of his claims are subject to the doctrine of procedural default or any other limitation on federal review.

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. *See* 28 U.S.C. § 2254(b). To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

(1)     was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted). The burden is on the

7

petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the

8

implicit findings of the state court as well.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

## III.    DISCUSSION

### A.    Adequacy of Pleading

Burton falls far short of meeting his burden to show that he is entitled to relief under 28 U.S.C. § 2254(d).  Although Burton proceeds *pro se*, he is still required to provide sufficient facts in support of his claim for relief.  *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").  Notwithstanding Burton's failure to file an adequate petition, the merits of his claims for relief are examined below under the applicable legal standard.

### B.    Sufficiency of the Evidence

Burton appears to contend that he is entitled to relief because the evidence is factually insufficient to show that the victim suffered "physical bodily injury" as the result of an assault as alleged in the indictment.  Importantly, challenges to the factual sufficiency are not cognizable on federal habeas corpus review.  A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the

petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). The Texas factual-sufficiency standard of review is based on state law. *See Clewis v. State*, 922 S.W.2d 126, 131-34 (Tex. Crim. App. 1996). A federal habeas court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986). On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted).

To the extent that Burton contends that the evidence was legally insufficient, his allegations do not demonstrate a valid claim. As noted above, a federal habeas corpus court reviews the evidentiary sufficiency of a state court conviction under the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d

1059, 1061 (5th Cir. 1995).  "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference."  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citation omitted).

Burton was convicted of aggravated assault with a deadly weapon in violation of §§ 22.01–.02 of the Texas Penal Code.  He claims that the State failed to prove all the requisite elements because there was no evidence that the victim, Reyna Burton, suffered the requisite bodily injury.  The court of appeals rejected  Burton's argument that the evidence was insufficient to support his conviction for aggravated assault after making the following findings based on the evidence admitted at trial:

> The indictment alleges that Burton committed the aggravated assault by "intentionally, knowingly, or recklessly caus[ing] bodily injury to Reyna Burton by striking her in the face and head with his hand, and [by] then and there us[ing] or exhibit[ing] a deadly weapon, to-wit: a machete, during the commission of said assault."[5]
>
> Burton contends in his first and second points respectively that there is legally and factually insufficient evidence to prove that Reyna suffered bodily injury[6] or that he exhibited a machete.
>
> The Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." TEX. PEN. CODE ANN. § 1.07(a)(8) (Vernon Supp. 2004-2005). A deadly weapon is "exhibited" when it is "consciously shown, displayed, or presented to be viewed during 'the commission of a felony offense or during immediate flight therefrom.'" *Searcy v. State*, 115 S.W.3d 628, 631 (Tex. App. — Waco 2003, no pet.) (quoting *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).

---

[5]   The indictment also charged Burton with aggravated sexual assault, but the jury acquitted him on this count.

[6]   Burton states in his first point that "there are insufficient facts to show the alleged injuries which [Reyna] claimed to have suffered." We construe this as an assertion that there is insufficient evidence to prove that she suffered "bodily injury" as alleged in the indictment.

Reyna testified that Burton and she had married in December 2001, but she left him about two months later because he "attacked" her. Reyna and Burton encountered each other again some months later at a new church Reyna had begun attending. According to Reyna, Burton came to her house on a daily basis thereafter because he wanted her to come back to him.

She testified that on the date in question Burton presented her a bracelet, which she declined to accept because she was still unsure if she wanted to return. After some discussion, she told him she did not want to return. Reyna testified that he then "grabbed a machete ... and grabbed me by my hair and put it on my neck and told me he was going to kill me. He dragged me through the back door...." The State offered a machete in evidence which Reyna identified as the weapon he had threatened her with.

Reyna testified that Burton later threw the machete down after they talked. When she tried to get it (presumably to throw it out of his reach), Burton "grabbed [her] and threw [her] in the bed and hit [her] in the head with his fist." He told her he wanted to have sex, and when she refused, "[h]e started hitting [her] in the head." She testified that he then sexually assaulted her.

According to Reyna, she did not seek medical treatment after the assault because no one was available to take care of her children. She testified on cross-examination that Burton hurt her when he hit her in the head with his fist.

Viewed in a light most favorable to the verdict, Reyna's testimony is legally sufficient to prove that Burton caused bodily injury to Reyna by hitting her in the head with his fist and that he exhibited the machete during the course of the assault. *See* Tex. Pen. Code Ann. § 1.07(a)(8); *Searcy*, 115 S.W.3d at 632; *Salley v. State*, 25 S.W.3d 878, 881 (Tex. App.— Houston [14th Dist.] 2000, no pet.); *Rangel v. State*, 747 S.W.2d 32, 33 (Tex. App. — San Antonio 1988, pet. ref'd). Accordingly, we overrule Burton's first point.

Burton contends in his second point that the evidence is factually insufficient because: (1) there are inconsistencies between Reyna's testimony and the statements she made to investigators; (2) she did not seek medical attention after the assault; (3) photographs taken the day after the assault do not reveal bruising or other signs of injury; and (4) she had a motive to allege

> that Burton had assaulted her so that she could apply for naturalization under
> the Violence Against Women Act.[7]
>
> We also observe that Burton testified in his own defense and denied that
> he assaulted Reyna on the date in question or that he threatened her with the
> machete.
>
> These disparities all concern credibility. In closing argument, Burton's
> attorney asked the jury to acquit him because the State had failed to present
> "credible evidence" and called these various inconsistencies to the jury's
> attention.
>
> The jury is the ultimate fact finder on issues of credibility, and by its
> verdict, the jury chose to believe Reyna. *See Parker v. State*, 119 S.W.3d 350,
> 355 (Tex. App. — Waco 2003, pet. ref'd).  We must defer to the jury in its
> resolution of such issues. *Id.*  Accordingly, we cannot say that the evidence is
> factually insufficient. Thus, we overrule Burton's second point.

*Burton v. State*, 2005 WL 2234002, at **1-3 (footnotes in original).  To the extent that

Burton challenges the victim's account of the assault, an assessment of witness credibility

is "beyond the scope of review" permitted by *Jackson v. Virginia.  Schlup v. Delo*, 513 U.S.

298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the

evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979)).  As set forth above, the evidence

is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  Under this standard,

"[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict."

*Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).  Based on its own review of the record,

---

[7]   42 U.S.C.A. § 13981 (West 1995 & Supp. 2005) (held unconstitutional in *U.S. v. Morrison*,
529 U.S. 598, 627, 120 S. Ct. 1740, 1759, 146 L.Ed.2d 658 (2000)).

this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Thus, Burton fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson v. Virginia* standard or that the state court's decision was otherwise incorrect. Therefore, Burton is not entitled to relief on his challenge to the sufficiency of the evidence.

### C.    Trial Court Misconduct

Burton contends that he is entitled to relief because his conviction was "coerced" by misconduct on the trial court's part. Liberally construed, Burton appears to claim that the trial judge coerced the guilty verdict by giving an *Allen* charge,[8] thereby "tampering" with

---

[8]    In *Allen v. United States*, 164 U.S. 492, 501 (1896), the Court stated that "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." If a jury is having difficulty reaching a unanimous verdict, it is permissible to instruct it

> that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* Thus, any supplemental instruction that urges members of a deadlocked jury to forego their differences is known as an "*Allen* charge." *United States v. Fields*, 483 F.3d 313, 338-39 (5th Cir. 2007).

14

the jury.  Burton did not raise this claim on direct appeal.  The state habeas corpus court, which also presided over the trial, rejected this claim, concluding that Burton failed to show proof of jury tampering or improper coercion.  *Clerk's Record*, dated July 26, 2007, at 77.

The Supreme Court has held that the potential coercive effect of a charge to a deadlocked jury must be evaluated in its context and under all the circumstances.  *See Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988).  The record supports the state habeas corpus court's finding that there was no improper coercion and does not reveal any evidence of judicial misconduct.  The record shows that Burton's trial commenced on June 8, 2004, and that the jury began its deliberations during the guilt-innocence phase of the trial at approximately 4:23 p.m. (16:23) that same day.  *See Court Reporter's Record*, vol. 2, at 178. The jury sent out several notes.  After nearly three hours of deliberation, the jury sent out a note at 7:08 p.m. (19:08), asking what would happen if it were unable to come to an agreement on one of the counts.  *See id*. at 181.  The trial court considered the note in open court and proposed a written reply, which instructed that if the jury were "unable to reach a unanimous verdict on each count it will result in a mistrial and the case would be tried to another jury."  *Id.* at 182.  There was no objection to this reply.  *See id*.

Approximately twelve minutes later at 7:12 p.m (19:20), the jury sent out another note indicating that it could not "agree on both counts" in the indictment, which alleged aggravated assault (count one) and aggravated sexual assault (count two).  *Id.* at 76.  After considering the note, the trial court decided to poll the jury.  *Id*. at 182.  The following exchange occurred in open court:

15

COURT:        Let the record reflect all the members of the jury
              are present and seated.  I've got your latest note
              out that says that "We cannot agree on both
              counts."

              And, Ms. T******, you are the presiding juror; is
              that correct?

JUROR:        Yes.

COURT:        Okay.  We are having you out by the agreement
              of the attorneys to ask you:  Do you feel that if the
              jury deliberated any longer or came back
              tomorrow do you feel that you could arrive at a
              unanimous verdict on both counts?  I just need a
              "yes" or "no."

JUROR:        No.

COURT:        Okay.  I'm going to ask — I'm going to poll the
              jury at this time.  She said that you all cannot
              agree on a unanimous verdict on both counts.
              We'll start back there with you, sir.  You are
              going to be Juror No. 1.  Do you agree with her
              statement?

*Court Reporter's Record*, vol. 2, at 183-84.  Juror Nos. 1, 2, 3, 4, 6, 7, and 8 agreed with the

presiding juror and stated that they did not believe they could reach a unanimous verdict on

both counts.  *Id.*  Juror No. 5 was undecided.  *Id.* at 184.  A few other jurors, including Juror

Nos. 9, 10, and 11, believed that a unanimous verdict could be reached on both counts.  *Id.*

at 184-85.  After polling the jury, the trial court asked the attorneys to approach the bench.

*Id.*  at 185.  The prosecutor asked the trial court to give the jury a little more time, "maybe

30 minutes more[.]"  *Id.*  The trial court agreed and gave the jury the following instruction

to continue deliberations after taking a ten minute break:

> COURT:   Okay.  All right.  Do you all want to take a short break at this time?  I know we have some smokers in there.
>
> JUROR:   Yeah.
>
> COURT:   Why don't we take about a 10-minute break; and then I'm going to direct that once you all reassemble in the jury room, you can continue to deliberate for a little while longer.

*Id.*  No objection was lodged to the trial court's instruction.  Twenty-four minutes later at 7:48 p.m. (19:48), the jury returned a unanimous verdict of guilty on the charge of aggravated assault (count one) and not guilty on the charge of aggravated sexual assault (count two).  *Id.* at 186.

There is no evidence in the record that the trial court "terrified" or tampered with the jury by engaging in misconduct.  Likewise, there is no evidence in the record showing that the instruction had an improper coercive effect.  Burton does not demonstrate that the state court's decision to reject this claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  It follows that he is not entitled to relief on this issue.

### D.   Prosecutorial Misconduct

Burton contends that he is entitled to relief because the prosecution engaged in misconduct by presenting false or unreliable testimony from the victim, Reyna Burton. Burton claims that the victim's testimony was not believable because she was an "illegal immigrant" who "fabricated a false marriage."  Burton explains that the only reason the victim filed charges against him was so that she could try to "gain legal [immigration status]"

17

by showing that she was eligible for visa given to the "battered spouse" of a United States citizen.[9]  Liberally construed, Burton appears to claim that the State knowingly presented false testimony.[10]  Burton did not raise this claim on direct appeal.  The state habeas corpus court rejected this claim, finding no evidence of prosecutorial misconduct.  *See Clerk's Record* dated July 26, 2007 at 77.

The State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. at 153; *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). "To establish a due process violation based on the government's use of false or misleading testimony, the defendant must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false."  *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997) (citing *Giglio*, 405 U.S. at 153-54).

In this case, Burton does not demonstrate that the victim committed perjury or that the State knowingly presented false testimony at trial.  Rather, Burton argues that the victim's testimony was not credible because of her status as an illegal immigrant.  The record reflects

---

[9]     The Violence Against Women Act of 1994 ("VAWA") permits a battered spouse to petition for a family-based visa on her own behalf, 8 U.S.C. § 1255(a), and may also allow other immigration benefits, such as relief removal or deportation under certain circumstances.  *See* 8 U.S.C. § 1229b(b)(2).

[10]    Burton also appears to claim that the prosecutor suppressed favorable exculpatory evidence in the form of Reyna Burton's naturalization application.  The record shows, however, that Burton's counsel had a copy of the application and that he offered it as an exhibit at trial during his cross-examination Reyna Burton.  *See Court Reporter's Record*, vol. 1, at 90.

that Burton's attorney cross-examined the victim at length about her claims and her immigration status.  *See Court Reporter's Record*, vo1. 1, at 74-91. During cross-examination, counsel for Burton tried to get the victim to admit that she filed a false claim for citizenship through naturalization by stating in her application that she had been a lawful permanent resident of the United States.  *See id*. at 81-91.  Burton's attorney argued that the victim lacked credibility and was only claiming to be a "battered wife" so that she could obtain a visa.  *See id*., vol. 2, at 169-70.  The jury believed the victim's testimony, however, and found Burton guilty of aggravated assault.  Burton's conclusory allegations do not demonstrate a valid claim under *Giglio* and he offers no reason to disregard the jury's decision to credit the victim's testimony.  *See, e.g., Titsworth v. Dretke*, 301 F.3d 301, 310 (5th Cir. 2005).  Burton does not establish that the state habeas corpus court's decision to reject this claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. Accordingly, Burton is not entitled to relief on this issue.

### E.      Ineffective Assistance of Counsel

Burton contends that he is entitled to relief because he was denied effective assistance of counsel at his trial.  In particular, Burton complains that his attorney failed to call a "critical witness" or to investigate by reviewing the District Attorney's file.  The state habeas corpus court rejected Burton's claims of ineffective assistance of counsel.  *Clerk's Record* dated July 26, 2007, at 77.  In particular, the state habeas corpus court found that Burton was

"adequately represented by counsel at trial" and that Burton "failed to show that trial counsel's performance was deficient such that it affected the outcome of the trial." *Id.*

Presumably, Burton contends that the state court's decision to reject his claim was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the test for ineffective assistance of counsel.  To prevail on an ineffective-assistance claim, a habeas petitioner must establish both elements of the *Strickland* test by showing that (1) counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (reciting the two-prong *Strickland* test).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To establish deficient performance under the *Strickland* standard, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

Even if defense counsel committed an error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance.  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)). A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Burton's allegations do not demonstrate the requisite deficient performance or actual prejudice in this instance.

Regarding Burton's allegation that his attorney failed to call witnesses, the Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would have testified are largely speculative."  *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations and quotations omitted).  To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377

(5th Cir. 2002). Burton does not meet that burden here. In that respect, Burton does not clearly identify the so-called "critical" witness that his attorney failed to call. More importantly, Burton does not provide a statement showing what this witness would have said and he does not demonstrate that the witness would have testified in Burton's favor if called at trial. Under these circumstances, Burton fails to show that his attorney was deficient for failing to call a witness.

To the extent that Burton also complains about his attorney's failure to investigate, his conclusory allegations also fail to establish a claim on this issue. A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Even assuming that his attorney was deficient for failing to investigate, Burton's unsupported allegations do not demonstrate that the outcome of his trial would have been different. Absent a showing that his attorney was deficient and that he was actually prejudiced as a result, Burton has not demonstrated a violation of *Strickland* with regard to his attorney's alleged failure to investigate or interview witnesses. Therefore, he does not show that the state court's decision to reject his claim was incorrect or unreasonable and he is not entitled to relief on this issue.

### F.    State Habeas Corpus Errors

Burton contends further that he is entitled to relief because the trial court and the respondent failed to adequately address his claims on state habeas corpus review. Burton's

claim fails as a matter of law because errors that allegedly arise during a state habeas corpus proceeding are not cognizable on federal habeas corpus review.  In that respect, it is well established in this Circuit that "infirmities in state habeas corpus proceedings do not constitute grounds for relief in federal court." *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *see also Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995 (citations omitted).  Instead, a habeas corpus petitioner must demonstrate "constitutional error at the trial or direct review" before a federal court may issue the writ. *Morris*, 186 F.3d at 585 n.6.

Burton has failed to establish that his trial or direct appeal was tainted by constitutional error.  Absent a showing that he was deprived of the ability to present a valid claim, Burton has not demonstrated that he is entitled to federal habeas corpus relief. Accordingly, Burton is not entitled to a writ of habeas corpus and his petition must be dismissed for failure to state a valid claim upon which relief can be granted.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability,

an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue in this case.

V.      **CONCLUSION AND ORDER**

For all of the foregoing reasons, the Court **ORDERS** as follows:

1.      The petitioner's motions for a judgment in his favor (Docs. # 37, # 39) are

**DENIED**.

2.      The petition **DENIED** and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on June 30th ,2008.


Nancy F. Atlas
United States District Judge